UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BONNIE LEE THOMPSON,

     Plaintiff,

v.                                     Case No: 8:19-cv-124-T-60JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Bonnie Lee Thompson, seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and proper legal standards, the undersigned recommends that the decision be reversed and remanded.

## BACKGROUND

### A.    Procedural Background

Plaintiff filed an application for a period of disability and disability insurance benefits on May 15, 2015. (Tr. 189–90.) Plaintiff also filed an application for supplemental security income. (Tr. 179–88.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 100–05, 108–17.) Plaintiff then requested an administrative hearing. (Tr. 119–20.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 30–44.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 15–24.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–3.) Plaintiff then

timely filed a Complaint with this Court.  (Dkt. 1).  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1958, claimed disability beginning on April 27, 2015.  (Tr. 180–81, 189.)  Plaintiff has some college education.  (Tr. 34.)  Plaintiff's past relevant work experience includes work as an assistant manager.  (Tr. 23–24, 35–37, 42.)  Plaintiff alleged disability due to fibromyalgia, heart conditions, edema, anxiety, depression, crying spells, brain aneurysm, acid reflux, arthritis pain, and thyroid conditions.  (Tr. 202.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since April 27, 2015 the alleged onset date.  (Tr. 18.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, ischemic heart disease, osteoarthritis, and obesity.   (Tr. 18.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 20.)  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  Function by function, the claimant remains able to lift and or carry 20 pounds occasionally and 10 pounds frequently, stand and or walk 6 hours in a workday, and sit 6 hours in a workday with normal breaks.  She can occasionally climb ladders, ropes, or scaffolds and frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  She must avoid concentrated exposure to hazards and irritants such as fumes, odors, dust, and gases.

(Tr. 20.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the

intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 23.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as an assistant manager.  (Tr. 23–24.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 24.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past

relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

# ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to find that Plaintiff had a severe mental impairment and consider the limitations of Plaintiff's mental impairments; (2) the ALJ erred in finding that Plaintiff has past relevant work as an assistant manager; (3) the ALJ erred in considering the effect of Plaintiff's obesity; and (4) the ALJ was not constitutionally appointed.  For the reasons that follow, Plaintiff's first contention warrants reversal.

## A.  Mental Impairments

At step two of the sequential evaluation process, the ALJ must consider the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to do basic work skills.  *Phillips*, 357 at 1237 (citing 20 C.F.R. § 404.1520(c)).  In this step of the sequential process, the claimant bears the burden of proof that he or she suffers from a severe impairment or combination of impairments.  *Gibbs v. Barnhart*, 156 F. App'x 243, 246 (11th Cir. 2005).  An impairment is not severe "only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  "Basic work activities" include: (1) physical functions, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b)(1)–(6).

If an ALJ errs in finding that a claimant's *additional* impairments are non-severe, such error is harmless when the ALJ finds that a claimant has a severe impairment. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010). This is because the ALJ has determined that step two of the sequential analysis is met and proceeds in the disability analysis. *Id.* ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [claimant] had a severe impairment," which is all that is required at step two of the sequential analysis); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Accordingly, even assuming that [claimant] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902–03 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded [claimant's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process.").

In this case, at step two of the sequential evaluation process, the ALJ found that Plaintiff had severe impairments of "fibromyalgia; ischemic heart disease; osteoarthritis; and obesity," (Tr. 18) and thus proceeded beyond step two. Any error in failing to find that Plaintiff suffers from *additional* severe mental health impairments would be harmless. *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013). Nevertheless, the ALJ is, "required to consider all impairments, regardless of severity, in conjunction with one another in performing the *latter steps* of the sequential evaluation." *Tuggerson-Brown*, 572 F. App'x at 951 (emphasis added). An ALJ's failure to consider the combination of a claimant's impairments requires reversal. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) ("Consideration of all

- 6 -

impairments, severe and non-severe, is required when assessing a claimant's RFC."); *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) (holding that failure to consider a claimant's impairments in combination "requires that the case be vacated and remanded for the proper consideration").

Although the ALJ stated he considered "all symptoms" in formulating the RFC, it is not clear from the ALJ's opinion that he sufficiently considered the effect of Plaintiff's mental impairments and their effect in combination with Plaintiff's physical impairments. *See Schink*, 935 F.3d at 1269 ("Here, although the ALJ stated he 'considered all symptoms' when assessing Schink's RFC, the content of his decision demonstrates he did not."). In considering the severity of Plaintiff's mental impairments, the ALJ noted "medically determinable mental impairments of major depressive disorder and generalized anxiety disorder." (Tr. 18.) After reviewing the medical evidence of record, including a psychological evaluation by Dr. Timothy Foster, the ALJ found Plaintiff had mild limitations in "understanding remembering, or applying information"; mild limitations in "interacting with others"; mild limitations in her "ability to concentrate, persist, or maintain pace"; and no limitations in her "ability to adapt or manage herself." (Tr. 19.) Based on these findings and the record as a whole, the ALJ found Plaintiff's mental impairments to be non-severe. (Tr. 20.) However, the ALJ specifically noted that these findings were not a RFC assessment "but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process" and the mental RFC assessment "used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." (Tr. 20.)

Yet, the ALJ's discussion of the RFC contains no such assessment. The ALJ noted that Plaintiff alleged disability based on "anxiety, depression, and crying spells," as well as difficulty using "memory, completing tasks, concentration, understanding, and following instructions." (Tr.

- 7 -

21.)  However, the RFC assessment focuses entirely on Plaintiff's physical impairments and makes no findings regarding Plaintiff's mental impairments, the evidence supporting them, or the effect of the impairments on Plaintiff's ability to work.  *See Schink*, 935 F.3d at 1269 ("In fact, the ALJ's ultimate conclusions as to RFC do not include even a single finding about Schink's mental capacities. Instead, the ALJ's findings concern Schink's physical capacities exclusively.")  Thus, as in *Schink*, the "the ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right."  *Id.* (quoting *Keeton*, 21 F.3d at 1066).  The undersigned recommends that the case be remanded for further consideration of the effect of Plaintiff's mental impairments on her RFC.

### B.  Past Relevant Work

Plaintiff also argues that the ALJ erred in finding that Plaintiff had past relevant work as an assistant manager.  (Dkt. 16 at 11.)  Plaintiff argues that her past relevant work should have been considered a "composite job containing aspects of stock clerk, janitor, cashier, and coffee maker" because Plaintiff had duties which are not contained within the description of an assistant manager.  (Dkt. 16 at 11–12.)

Step four of the sequential process requires the ALJ to assess the claimant's RFC and ability to perform past relevant work.  *See* 20 C.F.R. § 416.920(a)(4)(iv).  The claimant bears the burden of demonstrating she can no longer engage in past relevant work.  *See Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  A claimant can perform her past work if her RFC is sufficient to meet the demands of the relevant job.  *See* 20 C.F.R. §§ 404.1560(b), 416.960(b).  In considering whether a claimant can return to past work, the ALJ must (1) consider all the duties of the past relevant work and (2) evaluate the claimant's ability to perform the duties in light of her impairments.  *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990).  The claimant must

show that she can no longer "perform h[er] past kind of work, not that [s]he merely [is] unable to perform a specific job [s]he held in the past." *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) (citing 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986)). The ALJ's decision is reviewed under the substantial evidence standard. *Nye v. Comm'r of Soc. Sec.*, 524 F. App'x. 538, 544 (11th Cir. 2013); *Battle v. Astrue*, 243 F. App'x. 514, 523 (11th Cir. 2007).

Under *Jackson*, when a claimant's prior job involved functional demands and duties significantly in excess of those generally required for that type of work by employers in the national economy, it is not enough for the claimant to show that she cannot perform the demands and duties actually involved in the job. 801 F.2d at 1293. Instead, she must show that she cannot perform the functional demands and job duties of the position generally required by employers nationwide. *See id.*; SSR 82-61, 1982 WL 31387 (Jan. 1, 1982).

However, "when the claimant's previous work qualifies as a composite job, the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform [her] previous work as actually performed." *Smith v. Comm'r of Soc. Sec.*, No. 17-14937, 2018 WL 3598635, at *3 (11th Cir. July 26, 2018). A composite job is one that has "significant elements of two or more occupations and, as such, [has] no counterpart in the DOT." SSR 82-61 at *2. Past relevant work may qualify as a composite job "if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant." Program Operations Manual System ("POMS") DI 25005.020.[1]

Substantial evidence supports the ALJ's finding that Plaintiff's position was not a composite job. As the ALJ found, Plaintiff had past relevant work as an assistant manager. (Tr.

---

[1] The Social Security Administration's POMS is the publicly available operating instructions for processing Social Security claims. "While the POMS does not have the force of law, it can be persuasive." *Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003).

23.)  To establish that her position was a composite job, Plaintiff had to prove that her job had "significant elements of two or more occupations."  *See* SSR 82-61 (requiring that a composite job has "significant elements of two or more occupations").  Although Plaintiff had the burden on this issue, she introduced no evidence about how much time she spent performing the duties beyond that of an assistant manager or otherwise establishing that the duties were significant elements of her job.  *See Smith*, No. 17-14937, 2018 WL 3598635, at *3 (noting that claimant bore the burden of proving his position was a composite job but introduced no evidence on the issue).

Plaintiff failed to prove that her job had "significant elements of two or more occupations," as required under SSR 82-61.  Instead, the record shows only that Plaintiff referred to her job title as assistant manager.  (Tr. 35, 231.)  During the hearing, Plaintiff testified that as an assistant manager in a convenience store she took "care of customers and [the] cash register," she "lift[ed] heavy coffee pots," cleaned them out, and made fresh coffee, she would "[s]weep, mop, fill the cooler," and stock shelves.  (Tr. 35–36.)  In her work history report, Plaintiff listed her job title as "assistant manager," and described her job duties as:

> Provided lead w/clerks & supervise others w/stocking & services for client base, cashier duties, stocking, coffee setups, cooking, cleaning [throughout the day], empty the trash, mop, sweep, paperwork, deposits, counting drawers when shift over, setup scheduling, maintain safe work environment, call in service for equipment, restrooms, maintain drink machines, lift boxes for mixes & drinks, stock cups, lids, shelves of food, snacks, order, accept deliveries.

(Tr. 231.)  Plaintiff did not, however, establish how much of her time was spent performing these duties and how much time was spent supervising others to perform these duties.[2]

---

[2] Nor did Plaintiff establish how these duties were beyond the scope of an assistant manager at a convenient store. *See* DICOT § 189.167-018, 1991 WL 671497 ("Receives training and performs duties in several departments, such as credit, customer relations, accounting, or sales, to become familiar with line and staff functions, operations, management viewpoints, and company policies and practices that affect each phase of business. Observes experienced workers to acquire knowledge of methods, procedures, and standards required for performance of departmental duties. Workers are usually trained in functions and operations of related departments to facilitate subsequent transferability between departments and to provide greater promotional opportunities.").

The VE, having heard Plaintiff's testimony and being "familiar with the claimant's past work," testified that Plaintiff's past work was as "a retail sales assistant manager," DOT code 189.167-018, indicating the job was not a composite one.  (Tr. 42.)  The undersigned concludes that substantial evidence supported the ALJ's finding that Plaintiff's past relevant work was as an assistant manager, not a composite job.  *See Smith*, 2018 WL 3598635, at *3 (rejecting claimant's argument that his job was a composite job where he failed to present evidence that his job had significant elements of two or more occupations).

### C.  Obesity

Citing to Social Security Ruling 02-1p, Plaintiff argues that "the ALJ was required to conduct a more rigorous analysis of the impact of her obesity on Plaintiff's RFC."  (Dkt. 16 at 15.)  Obesity should be considered in conjunction with other impairments "because it can cause further degradation of a claimant's physical capacity, especially in the presence of certain impairments."  *Wind v. Barnhart*, 133 F. App'x 684, 690–91 (11th Cir. 2005) (citing Social Security Ruling 02-1p).  However, "it is the functional limitations imposed by a condition, rather than the mere diagnosis of the condition, that determines disability."  *Ingram v. Astrue*, No. 8:07-CV-1591 JDWTBM, 2008 WL 2943287, at *5 (M.D. Fla. July 30, 2008).

Despite Plaintiff's contention, the ALJ found Plaintiff's obesity to be a severe impairment (Tr. 18) and carefully considered the effect of Plaintiff's obesity in formulating the RFC.  (Tr. 23.)  The ALJ "carefully considered Social Security Ruling 02-1p," but found that "musculoskeletal examinations revealed no significant abnormalities."  (Tr. 23.)  The ALJ noted that [m]otor strength, sensation, and reflexes were grossly intact and there were no neurological deficits."  (Tr. 23.)  Additionally, "[c]ardiovascular examinations showed no murmurs, gallops, or rubs, and the claimant's lungs were clear bilaterally to auscultation and percussion."  (Tr. 23.)  In sum, the ALJ

found that "the evidence indicates few, if any, significant findings related to claimant's obesity." (Tr. 23.)

Although Plaintiff argues that the ALJ should have found Plaintiff's RFC to be more limited (Dkt. 16 at 16), Plaintiff "has pointed to no evidence of record . . . suggesting that [her] capacity for [light] work was further reduced by [her] obesity." *Ingram*, 2008 WL 2943287, at *6. "Plaintiff's failure to identify evidence of any additional limitation arising from obesity is fatal to [her] claim." *Id.*; *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("The burden is upon the claimant to demonstrate the existence of a disability as defined by the Social Security Act."). Substantial evidence supports the ALJ's consideration of Plaintiff's obesity in formulating the RFC.

### D.  Constitutional Appointment

In *Lucia v. SEC*, the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers" that must be properly appointed under the Appointments Clause as Officers of the United States.  138 S. Ct. 2044, 2049 (2018).  Plaintiff argues that, under *Lucia*, "the ALJ was not properly appointed under the Constitution's Appointments Clause and thus did not have legal authority to preside over this matter."  (Dkt. 16 at 17.)  However, *Lucia* was decided upon the claimaint's "'timely challenge to the constitutional validity of the appointment'" of the ALJ.  138 S. Ct. 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182–83 (1995)).  Courts have held that in "the context of Social Security disability proceedings," an Appointments Clause challenge must be raised "before the ALJ's decision becomes final."  *Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *5 (N.D. Iowa Sept. 14, 2018).  Indeed, the overwhelming authority, collected in Defendant's memorandum (Dkt. 19 at 15–17), holds "that *Lucia* requires SSA claimants to raise an Appointments Clause challenge at some point during the administrative

process."  *Marchant ex rel. A.A.H. v. Berryhill*, No. 18-0345, 2019 WL 2268982, at \*4 (E.D. Pa. May 28, 2019); *see also Smith v. Saul*, No. 1:17-cv-01236-cgc, 2019 WL 4131740, at \*2 (W.D. Tenn. Aug. 28, 2019) (noting that "the overwhelming majority of the courts that have considered this question have held that a 'timely challenge' of an ALJ's authority must occur at the administrative level").

Plaintiff has not shown that she challenged the constitutional validity of the ALJ's appointment in this case at the administrative level.  Additionally, Plaintiff has not shown that this is "one of those rare cases" in which the Court should use its discretion to hear Plaintiff's "challenge to the constitutional authority of the [ALJ]."  *See Freytag v. C.I.R.*, 501 U.S. 868, 879 (1991); *see also Muhammad v. Berryhill*, 381 F. Supp. 3d 462, 469 (E.D. Pa. 2019) ("While Muhammad's challenge is neither 'frivolous nor disingenuous,' there is nothing rare about his case.") (internal citation omitted).  As such, Plaintiff's challenge under the Appointments Clause challenge is untimely.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1. The decision of the Commissioner be **REVERSED** and the case be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the recommendations set forth above; and

2.  The Clerk of the Court be directed to enter judgment consistent with this Report and Recommendation.

**IT IS SO REPORTED** in Tampa, Florida, on January 15, 2020.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Thomas P. Barber
Counsel of Record